IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| JEFFREY DONALD DRYE, | ) | CIV. NO. 12-00355 JMS |
|---|---|---|
| | ) | CR NO. 10-00824-01 JMS |
| Petitioner, | ) | |
| | ) | ORDER: (1) DISMISSING |
| vs. | ) | PETITIONER'S MOTION UNDER |
| | ) | 28 U.S.C. § 2255 TO VACATE, SET |
| UNITED STATES OF AMERICA, | ) | ASIDE, OR CORRECT SENTENCE |
| | ) | BY A PERSON IN A FEDERAL |
| Respondent. | ) | CUSTODY; AND (2) DENYING A |
| | ) | CERTIFICATE OF |
| _____ | ) | APPEALABILITY |

**<u>ORDER: (1) DISMISSING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN A FEDERAL CUSTODY; AND (2) DENYING A CERTIFICATE OF APPEALABILITY</u>**

**I. INTRODUCTION**

Currently before the court is Petitioner Jeffrey Donald Drye's ("Drye") Petition Pursuant to 28 U.S.C. § 2255 to Vacate Sentence and Set Aside for a New Sentencing ("§ 2255 Motion"). Doc. No. 144. Drye challenges his sentence on various grounds, including ineffective assistance of counsel.

The government filed an Opposition on July 26, 2012, Doc. No. 149, and although the court provided Drye the option to file a Reply by August 24, 2012, Doc. No. 150, he failed to do so. For the following reasons, the court DENIES Drye's § 2255 Motion and DENIES a certificate of appealability.

## II. BACKGROUND

On November 17, 2010, a grand jury in the District of Hawaii returned a 2-count Indictment charging Drye with abusive sexual contact (in violation of 18 U.S.C. §§ 7(3) and 2244(b)) and sexual assault in the first degree (an assimilated crime in violation of Hawaii Revised Statutes § 707-730). The Indictment charged that on or about January 30, 2010, within the boundaries of the Hawaii Volcanoes National Park, Drye (1) knowingly engaged in "sexual contact" with J.S. without her permission, with "sexual contact" meaning the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person (Count I, abusive sexual contact); and (2) subjected J.S. to an act of sexual penetration by strong compulsion (Count II, sexual assault in the first degree). Count I carried a maximum penalty of 24 months; Count II carried a maximum penalty of 240 months.

These charges were the culmination of an investigation that uncovered different versions of what occurred on January 30, 2010. Investigators first became aware of the January 30, 2010 incident on February 17, 2010 after J.S.'s father reported that Drye had sexually assaulted J.S. Doc. No. 141, PSR ¶ 6.

When questioned by investigators, J.S. relayed that Drye, J.S., A.C., and J.W. entered Hawaii Volcanoes National Park to spend the night camping, and that Drye sexually assaulted J.S. when A.C. and J.W. left the campsite to get food from the car. Specifically, J.S. reported that Drye kissed her and touched her breasts and vagina even though J.S. kept pushing him away, and that Drye subsequently raped her. *Id.* ¶ 13.

In comparison, in a March 5, 2010 interview, Drye admitted that he kissed J.S. and touched her stomach, and may have touched her breast (although he could not recall), and that he stopped kissing J.S. when she asked him to stop. *Id.* ¶ 17. On June 8, 2010, however, Defendant told a different version after he underwent a polygraph examination which indicated deception in some of his responses. *Id.* ¶ 19; *see also* Doc. No. 126, Tr. at 5-7.[1] In a post-polygraph examination that same day,[2] Drye admitted that he touched J.S.'s breasts after she told him to stop, unsuccessfully attempted to touch J.S.'s vagina (the tightness of her pants prevented him), and also rubbed J.S.'s upper thighs and crotch area over

---

[1] There are some discrepancies in the record regarding the actual date that this interview took place. *See* Doc. No. 141, PSR ¶ 19 (May 5, 2010); Doc. No. 149-1, Park Decl. ¶ 4 (June 6, 2010); Doc. No. 126, Tr. at 5-7 (testimony FBI Agent Jason White reciting June 8, 2010). Because the exact date of when the interview took place is not relevant, the court uses the date testified to by Agent White for ease of reference.

[2] The jury, of course, was not told that Drye underwent a polygraph examination. They were only told of his post-test statement.

3

her clothing even though J.S. pushed his hands away and told him to stop. Doc. No. 141, PSR ¶ 19. Drye also provided investigators the clothing he wore the night of the incident, but investigators did not perform forensic analysis. *Id.* ¶ 20.

Trial commenced on June 14, 2011 and proceeded through four days of testimony. In the government's case-in-chief, J.S. testified that over her objections Drye kissed her, touched her breasts and vagina, and then raped her. Doc. No. 127, Tr. at 22-30. FBI Agent Jason White testified to Drye's admissions during the June 8, 2010 interview. Drye then took the stand on his own behalf and testified that he and J.S. engaged in consensual french kissing and that he touched J.S.'s inner thighs and crotch area on the outside of her clothing and attempted to touch her breasts, but that J.S. kept moving his hands away from these areas. Doc. No. 129, Tr. at 83-85; Doc. No. 130, Tr. at 19-21. He further admitted that he told Agent White that he had touched J.S.'s inner thighs and crotch area. Doc. No. 130, Tr. at 19.

On June 20, 2011, the jury found Drye guilty of abusive sexual contact and not guilty of sexual assault in the first degree. On November 3, 2011, Drye was sentenced to twenty-one months imprisonment to be followed by one year supervised release, and ordered to pay a $100 special assessment fee. Final judgment was entered on November 4, 2011. Doc. No. 139. Drye did not file an

4

appeal.

On June 25, 2012, Drye filed his § 2255 Motion asserting, among other things, that Assistant Federal Public Defender Shanlyn Park ("Park") provided ineffective assistance of counsel. Doc. No. 144. On July 10, 2012, the court entered an order finding that Drye waived his attorney-client privilege as to the issues raised in the § 2255 Motion, as well as to communications between Drye and Park that are reasonably related to those issues. Doc. No. 148. On July 26, 2012, the government filed its Opposition. Doc. No. 149. Drye failed to file an optional reply.

### III. STANDARD OF REVIEW

The court's review of Drye's Motion is governed by 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A court should hold an evidentiary hearing on a § 2255 motion "unless the files and records of the case conclusively show that the prisoner is

entitled to no relief." 28 U.S.C. § 2255(b). "In determining whether a hearing and findings of fact and conclusions of law are required, '[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'" *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). "Thus, the district court's decision that [the petitioner's] ineffective assistance claim did not warrant an evidentiary hearing [is] correct if his allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (citing *Schaflander*, 743 F.2d at 717) (quotations omitted). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). After careful consideration of Drye's allegations and the record as a whole, the court concludes that an evidentiary hearing is not required -- Drye makes no specific factual allegations that state a claim upon which relief can be granted.

///

///

## IV. **DISCUSSION**

Drye asserts that he entitled to relief pursuant to § 2255 because (1) his conviction was obtained in violation of the privilege against self-incrimination, (2) the government failed to disclose to Drye evidence favorable to him, and (3) he was denied effective assistance of counsel. For each claim, Drye describes its basis in only the most conclusory fashion and with the barest of explanations. Although the government provided a detailed Opposition and submitted evidence to refute his ineffective assistance of counsel claims, Drye did not file any Reply. The court nonetheless construes Drye's claims with the utmost liberality and based on the following, finds that these claims lack merit.

### A. **Violation of Privilege Against Self-Incrimination**

Drye asserts that his conviction was obtained through a violation of his privilege against self-incrimination because "I had no idea when I talked about where I placed my hand while [J.S. and I] were having consensual french kissing that the ramifications would be of such life shattering consequences." Doc. No. 144, Mot. at 4. This argument lacks merit.

"While the Fifth Amendment does prohibit compelled self-incrimination, it 'does not preclude a witness from testifying voluntarily in matters which may incriminate him.'" *United States v. Smith*, 365 Fed. Appx. 781, 785

(9th Cir. 2010) (quoting *United States v. Washington,* 431 U.S. 181, 186-87 (1977)). In general, "a statement may be considered involuntary if it is 'extracted by any sorts of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" *Beaty v. Schriro,* 509 F.3d 994, 999 (9th Cir. 2007) (quoting *Hutto v. Ross,* 429 U.S. 28, 30 (1976)).

Drye offers no explanation as to how his testimony was compelled -- a lack of understanding the elements of the charges does not suggest that his testimony was involuntary. *See Oregon v. Elstad*, 470 U.S. 298, 316 (1985) ("This Court has never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness."). And as explained by his counsel Park, Drye made the decision to testify after Park and others at the Federal Defender's Office discussed with him the consequences of testifying and further advised him that it was exclusively his decision whether to testify. Doc. No. 149-1, Park Decl. ¶¶ 8-10. The court also fully apprised Drye of his right not to testify when he took the stand:

> The Court: Mr. Drye, you understand, sir, that you have a constitutional right not to testify, right?
> The Defendant: Yes, Your Honor.
> The Court: And if you don't testify, I would instruct the jury that they could not consider that in any way. They couldn't draw any inferences based on the fact that you didn't testify. In other words, they couldn't hold that against you. Do you understand that?

8

> The Defendant: Yes, Your Honor.
> The Court: And you also have the absolute right to testify, right?
> The Defendant: Yes.
> The Court: And so you made the decision you are going to testify then; is that right?
> The Defendant: Yes, sir.
> The Court. That's fine. I just want to make sure you understand your rights; that's all.

Doc. No. 129, Tr. at 68-69.

Given that Drye was fully apprised of his rights and voluntarily made the decision to testify, Drye has offered no cognizable basis for how his testimony violated his privilege against self-incrimination. Once Drye decided to testify, he certainly cannot complain that he was harmed by testifying truthfully.

**B.    Failure to Disclose Evidence Favorable to Drye**

Drye argues that the government failed to disclose evidence favorable to him because "no DNA testing was done, there was no sexual contact only consensual kissing, and inconsistent of her testimonies [sic]." Doc. No. 144, Mot. at 4. The court rejects this argument.

Pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." Further, where a

9

petitioner claims that the government failed to develop evidence (as opposed to suppress evidence already available), the relevant inquiry is whether the failure to preserve and/or test evidence was motivated by "bad faith." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988); *see also Villafuerte v. Stewart*, 111 F.3d 616, 625-26 (9th Cir. 1997) (finding no due process violation where failure to test a semen sample was not in bad faith).

Drye has not established, much less even argued, that any DNA testing would be material to his abusive sexual assault conviction or that the government's failure to test for DNA evidence was motivated by bad faith. Drye apparently ignores that he was convicted of abusive sexual assault, not sexual assault in the first degree. As a result, DNA testing would not assist in refuting J.S.'s assertions of where Drye touched her. And in any event, J.S. testified that she threw away all of her clothes shortly after the incident, *see* Doc. No. 127, Tr. at 48-50, such that the only potential clothing on which to perform DNA testing was Drye's. The court is at a loss as to what Drye believes DNA testing of his own clothing would reveal that would be material. *See, e.g.*, *Dorotik v. Davidson*, 2009 WL 1660369, at *5 (S.D. Cal. June 12, 2009) (finding that "mere speculation" regarding what DNA testing might reveal cannot create a "substantial showing" that the result of the trial would have been different).

10

In sum, the court rejects that Drye has established that the government violated his constitutional rights by failing to perform DNA testing.[3]

## C. Ineffective Assistance of Counsel

In support of his ineffective assistance of counsel claim, Drye states:

> I feel my counsel did not represent me properly during trial or with filing an appeal such as this one. Also an appeal was never set for a sentence reduction.

Doc. No. 144, Mot. at 4. Liberally construing the § 2255 Motion as a whole, Drye appears to be arguing that Park provided ineffective assistance of counsel (1) at trial by allowing Drye testify on his own behalf;[4] (2) by failing to file an appeal or § 2255 Motion; and (3) in representing Drye at sentencing and/or failing to file an appeal regarding his sentence. Based on the following, the court rejects each of these arguments.

---

[3] It appears that Drye procedurally defaulted on both this and his self-incrimination claim because he did not raise them on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). The government did not, however, raise Drye's procedural default and therefore it has waived such argument. *See United States v. Ware*, 416 F.3d 1118, 1121 (9th Cir. 2005).

[4] To the extent Drye asserts that Park was ineffective by failing to obtain DNA testing, such argument fails for all the reasons explained above -- it was objectively reasonable for Park not to seek such testing where J.S. had thrown her clothes away and Drye's clothing would not yield material information, and Drye has failed to show any prejudice given that DNA testing would not have affected his conviction for abusive sexual contact.

11

### 1. *Legal Standard for Ineffective Assistance of Counsel Claims*

To prevail on an ineffective assistance claim, a § 2255 movant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690; *see Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

Even upon showing that counsel's performance is deficient, the petitioner must also show that the deficiency was prejudicial to the petitioner's defense. *Id*. at 692. Stated differently, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A court need not determine

whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *See id.* at 697. In other words, any deficiency that does not result in prejudice necessarily fails.

### 2. *Application*

#### a. *Representation at trial*

Drye asserts, without any explanation or support, that Park "did not represent [Drye] properly during trial." *See* Doc. No. 144, Mot. at 4. Needless to say, conclusory allegations of ineffective assistance of counsel made with no factual or legal explanation fall well short of stating a cognizable claim for ineffective assistance of counsel. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal."); *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) ("[C]onclusory suggestions that his trial and state appellate counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation.").

And to the extent Drye is asserting that Park was ineffective by allowing Drye to take the stand, this argument is meritless. As Park explains in her Declaration, Drye was facing a two-year maximum sentence on the abusive sexual contact charge, and a twenty-year maximum on the sexual assault in the first

13

degree charge. Doc. No. 149-1, Park Decl. ¶ 3. Evidence in support of these charges included not only J.S.'s testimony that Drye had raped her, but also Drye's two statements made to investigators, one of which appeared to admit the elements of the abusive sexual assault charge. *Id.* ¶ 4. Because Drye did not want to plead guilty to the abusive sexual contact charge, Park advised him that he should testify to explain his statements to the jury. *Id.* ¶ 7. In doing so, Park and others in her office advised Drye of the consequences of testifying, and after Drye decided to testify, they prepared him to testify. *Id.* ¶¶ 8-10. Drye was repeatedly advised that it was exclusively his decision whether to testify and he never expressed any reservations about testifying. *Id.* ¶¶ 10-11. Given these facts, the court finds that Park made sure that Drye was aware of the consequences of testifying so that he could make an informed decision whether to take the stand in his own defense.

Further, Park's advice for Drye to testify was certainly a reasonable, strategic choice given the evidence against Drye. *See Strickland*, 466 U.S. at 690-91. Specifically, the court clearly recalls that Drye's testimony was largely directed at his defense to J.S.'s claim of sexual assault in the first degree. That is, because Drye had previously admitted the elements of abusive sexual contact to the FBI during his June 8, 2010 interview, and because Count I carried a maximum sentence of only two years, it was perfectly clear to the court that Drye testified in

an effort (which was ultimately successful) to be acquitted of Count II and thus limit his exposure to two years incarceration. And indeed, this decision worked in Drye's favor -- his testimony created a reasonable doubt whether Drye had raped J.S. as she claimed.

In sum, the evidence establishes that Park represented Drye well within the objective standard of reasonableness, and that Drye has no basis to assert that the result of trial would have been better for him if he did not testify.

        b.     *Failure to file an appeal or § 2255 motion*

Drye asserts, again without any explanation whatsoever, that Park provided ineffective assistance of counsel by failing to "fil[e] an appeal such as this one." Doc. No. 144, Mot. at 4. Whether Drye is referring to a direct appeal or a § 2255 Motion, he has failed to carry his burden.

As to the filing of a direct appeal, an attorney "who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). An attorney does not act deficiently, however, by following a client's explicit instruction not to file a notice of appeal. *Id.* ("[A] defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." (citing *Jones v. Barnes*, 463

U.S. 745, 751 (1983))). Further, "where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken [the question becomes] whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. If counsel has consulted with the defendant, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

Drye asserts neither that Park failed to discuss his options nor that he asked Park to file an appeal. And in opposition, the government presents detailed evidence both that Park consulted with Drye and that Drye stated after this consultation that he did not want to file an appeal. Specifically, Park explains in her Declaration that after sentencing she met with Drye to discuss whether he wanted to appeal. Doc. No. 149-1, Park Decl. ¶ 15. During this meeting, Park explained the appellate process, they discussed the trial and sentencing, and Park gave her legal opinion that there were no grounds for an appeal. *Id.* In response, Drye stated that he understood and did not ask Park to file an appeal. *Id.* Despite several subsequent discussions, Drye did not raise the issue of an appeal. *Id.* ¶ 16.

Drye offered no evidence that would call into question Park's assertions regarding their discussions on appeal. Indeed, Drye had the opportunity

16

to submit a Reply in response to the government's arguments and evidence and chose to submit nothing. As a result, the court can come to only one conclusion -- that Park advised Drye of the issues regarding appeal and that Drye instructed her not to appeal. Given these facts, there is simply no basis to find Park's representation deficient -- she provided Drye information to make an informed decision and afterward did precisely what Drye asked her to do.

As to the filing of a § 2255 Motion, Drye did contact Park in June 2012 to obtain assistance in filing his § 2255 Motion. As Park explains, she informed him that she could not help him given that the § 2255 Motion would likely assert that she was ineffective as his attorney. Doc. No. 149, Park Decl. ¶ 17. Park instead advised Drye that he could draft and file his own § 2255 Motion, which is precisely what he did. It should go without saying that Park had no duty to assist Drye in making arguments to the court that she herself was ineffective.

The court therefore rejects that Park provided ineffective assistance of counsel in either failing to file an appeal or assist Drye in filing his § 2255 Motion.

    *c.*    *Sentencing and/or appealing the sentence*

Drye asserts that he was denied ineffective assistance of counsel because "an appeal was never set for a sentence reduction." Doc. No. 144, Mot. at

17

4. To the extent Drye asserts that Park should have appealed Drye's sentence, such argument fails for the reasons stated above -- Park consulted with him regarding whether he wished to appeal and in response he never asked her to file an appeal. Further, to the extent Drye asserts that Park provided ineffective assistance of counsel at sentencing, such argument is wholly unsupported by the record.

Specifically, Drye faced an advisory sentencing range of twenty-one to twenty-four months. Doc. No. 149-1 Park Decl. ¶ 13. Prior to sentencing, Park filed a Sentencing Memorandum raising a number of mitigating factors for the court to consider including Drye's service to his country and community, family support, impact on his young family, employment history, pretrial compliance, and the collateral consequences of his conviction. *Id.* Park also filed an Objection to Victim Impact Statement challenging the assertions raised by J.S. and requesting that the court give it little or no consideration. *Id.* Park's efforts resulted in Drye receiving a twenty-one month sentence, three months less than the statutory minimum.

The only conclusion these facts support is that Park provided Drye extremely competent representation that resulted in Drye receiving a lower sentence than he otherwise could have received. Simply put, there is no supportable basis that Park provided ineffective assistance of counsel.

## V. CERTIFICATE OF APPEALABILITY

In dismissing the § 2255 Motion, the court must also address whether Drye should be granted a certificate of appealability ("COA"). *See* R. 11 Governing § 2255 Cases in the U.S. Dist. Cts. (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant"). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient." *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc). The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further." *Id.* (citation and internal quotation marks omitted). The standard "requires something more than the absence of frivolity but something less than a merits determination." *Id.* (internal quotation marks omitted).

The court carefully reviewed all of Drye's assertions and gave him every benefit by liberally construing them. Drye had the opportunity to explain his assertions in response to the government's Opposition and evidence, and failed to file any Reply. Based on the above analysis, the court finds that reasonable jurists could not find the court's rulings debatable. Accordingly, a COA is DENIED.

## VI. CONCLUSION

Based on the above, the court DENIES the Petition pursuant to 28 U.S.C. § 2255 to Vacate Sentence and Set Aside for a New Sentencing, and DENIES a certificate of appealability.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 12, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Drye*, Civ. No. 12-00366 JMS, Cr. No. 10-00824-01 JMS, Order: (1) Dismissing Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in a Federal Custody; and (2) Denying a Certificate of Appealability